JAMES SESSOMS,

                          **MEMORANDUM & ORDER**

        Petitioner,             14-CV-06658-FB

    -against-

UNITED STATES OF AMERICA,

        Respondent.
-------------------------------------------------x

*Appearances:*

| For the Petitioner: | For the Respondent: |
|---|---|
| SAM ALLEN SCHMIDT | JAMES PATRICK LOONAM |
| Law Office of Sam A. Schmidt | United States Attorney |
| 111 Broadway, Suite 1305 | Eastern District of New York |
| New York, NY 10006 | 271 Cadman Plaza East |
|  | Brooklyn, New York 11201 |

JILLIAN SPITZER HARRINGTON
P.O. Box 6006
Monroe Township, NJ 08831

**BLOCK, Senior District Judge:**

      On August 16, 2011, a jury convicted James Sessoms ("Sessoms" or "petitioner") of violating 18 U.S.C. §§ 1962(c), 1962(d), 1959(a)(5), 1959(a)(1), 1951(a), 924(c)(1); 21 U.S.C. § 846; and 18 U.S.C. § 924(c)(1). These criminal offenses arose from Sessoms' actions during his time with the Cash Money Brothers ("CMB"), a violent gang led by Damion Hardy ("Hardy"). On August 18, 2011, Sessoms was sentenced to thirty-five (35) years of imprisonment and four (4) years of

supervised release. His conviction was affirmed on appeal. *See United States v. Sessoms*, 488 F. App'x 539 (2d Cir. 2015).

In this habeas proceeding under 28 U.S.C. § 2255, Sessoms contends that his trial counsel, Gregory Cooper ("Cooper"), was constitutionally ineffective for several purported mistakes. Cooper's alleged errors included failing to (1) provide Sessoms with adequate advice before and during trial; (2) relay a plea offer with a recommended sentence of a seventeen-year term of incarceration from the Government; (3) advise the Court that he was under investigation by the United States Attorney's Office for the Southern District of New York ("SDNY") as to an unrelated and ultimately abandoned civil matter; (4) request that the jury be informed that venue constituted an element of the crimes charged; and (5) ask the Court to grant immunity to a prosecution witness so as to compel that witness' testimony. A hearing, confined to the issue of whether Cooper transmitted the Government's plea offer to Sessoms, was held on February 3, 2016. For the reasons set forth below, Sessoms' habeas petition is DENIED.

## I

To prevail on his ineffective assistance claim, Sessoms must satisfy the familiar *Strickland* test by showing "(1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that as a result he suffered prejudice." *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011) (citing *Strickland v. Washington*, 466

U.S. 668, 687 (1984)). Both *Strickland* requirements must be shown before constitutionally recognizable ineffectiveness can be found. *Strickland*, 466 U.S. at 687; *United States v. Jones*, 482 F.3d 60, 76 (2d Cir. 2006). Accordingly, either requirement may be used to dispose of a claim. *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Errors that "cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness" contravene this standard. *Cornell v. Kirkpatrick*, 665 F.3d 369, 377 (2d Cir. 2011) (quoting *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009)). However, "[t]he decision whether to call any witnesses on behalf of the defendant, and if so, which witnesses to call," is generally considered "a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992). It is thus "ordinarily not viewed as a lapse in professional representation." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000); *see also, e.g.*, *Eze v. Senkowski*, 321 F.3d 110, 129 (2d Cir. 2003) ("A defense counsel's decision not to call a particular witness usually falls under the realm of trial strategy that we are reluctant to disturb," provided "the decision not to call a witness . . . [is] grounded in some strategy that advances the client's interests."). In addition, "while counsel has a duty 'to consult with

the defendant on important decisions and to keep the defendant informed of important developments,' a reviewing court asks only 'whether counsel's assistance was reasonable considering *all* the circumstances.'" *Samet v. United States*, 559 F. App'x 476, 50 (2d Cir. 2014) (emphasis added).

Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different." *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

A. **Cooper's General Performance**

In his broadest attack on Cooper's competence, Sessoms accuses his counsel of failing to have a trial strategy or complete the most basic homework. Obviously, Sessoms' displeasure with Cooper was and remains manifest. The overall record, however, contains no proof of constitutionally recognizable ineffectiveness.

In the months leading to Sessoms' trial, Cooper undertook several pivotal tasks. He met with his client on six occasions (though Sessoms had remembered only four). He unsuccessfully challenged the Government's motion to deem Sessoms' case complex and explicitly accused the Government of failing to meet its statutory discovery obligations, thereby raising the specter of sundry sanctions. Cooper thereafter moved to suppress Sessoms' post-arrest statement by motion and at oral argument. During *voir dire*, he even requested two extra preemptory challenges.

At the trial Cooper ably performed the most significant tasks required of a

criminal defendant's counsel. He and his co-counsel vigorously cross-examined every prosecution witness, impeaching each for prior false statements and prior bad acts; not a single witness testified without suffering from the inquisitorial scrutiny of Sessoms' lawyers, including Cooper. However effective such inquisitions and efforts proved to be, Cooper was clearly prepared to try his client's case, given his meticulous questioning, effective presentation, and persistent arguments on Sessoms' behalf.

Admittedly, Sessoms' claims, if honestly believed and amply supported, would damn Cooper as a less than exemplary member of this state's bar. But, within this case's voluminous record, no "actual lapse in representation" can be discerned, *Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980), and the Court may not now "use hindsight to second-guess [counsel's] strategy choices," *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994), or rely solely upon Sessoms' beliefs and accusations to the contrary, each of which is contested by both Cooper and the Government, *see, e.g.*, *Paige v. Lee*, 99 F. Supp. 3d 340, 349 (E.D.N.Y. 2015) (collecting cases standing for the proposition that an ineffective assistance claim cannot survive where there is "no evidence that avenues suggested by the client [and] which might have altered the outcome were ignored").

In sum, because Cooper provided an "adequately vigorous defense," *United States v. Griffin,* No. 98–1460, 1999 WL 972675, at *2 (2d Cir. Oct. 1, 1999), none of his more debatable actions can constitute ineffective assistance, *see Henry v. Poole*, 409

F.3d 48, 63 (2d Cir. 2005) (stating rule).

## B. Conveyance of Plea Offer

Sessoms also accuses Cooper of failing to transmit a plea offer that he would have readily signed. "[I]t is clear that failure to advise a client as to a plea offer is unreasonable performance." *Raysor*, 647 F.3d at 496 (citing *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999)). And a large sentencing disparity "provides sufficient objective evidence - when combined with a petitioner's statement concerning his [or her] intentions [to plead guilty] - to support a finding of prejudice under *Strickland*." *United States v. Gordon*, 156 F.2d 376, 381 (2d Cir. 1998). However, such a showing will do no more than establish the need for a full hearing, as took place here, at which a petitioner's credibility must still be assessed and set against other witnesses' apparent veracity. *See, e.g.*, *Raysor*, 647 F.3d at 496; *Cullen*, 194 F.3d at 407–08. In this analysis, "[a] convicted felon's self-serving testimony" is usually seen as "not likely to be credible"; evidence of a more definitive and objective kind must eventually be presented. *Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003); *see also Samet*, 559 F. App'x at 49 (invoking *Purdy* when a petitioner alleged that his counsel failed to inform him of a formal plea offer in which a punishment less than that ultimately inflicted was seemingly promised). To summarize, for Sessoms to demonstrate his second ground for ineffectiveness, compelling proof of two facts must be given: (1) the existence of an actual and concrete offer, and (2) the petitioner's unconditional readiness to accept that

6

offer, but for his or her counsel's advice, at the time of its transmission. *See United States v. Frederick*, 526 F. App'x 91, 93 (2d Cir. 2013) (invoking such a rule and citing *Purdy*, 208 F.3d at 49, and *United States v. Arteca*, 411 F.3d 315, 321 (2d Cir. 2005)). Here, in striving to meet this "high burden," Sessoms has faltered twice. *Lynn v. Bliden*, 443 F.3d 238, 247 (2d Cir. 2006).

Primarily, Sessoms has failed to establish the drafting and finalization of any formal and definite plea to which he would have acquiesced. *See,* e.g., *Samet*, 559 F. App'x at 49 (distinguishing between formal plea offers and informal plea negotiations). Rather, both his counsel and a United States Assistant Attorney credibly attest that the Government never proposed more than a global plea that Sessoms rejected due to his unwillingness to cooperate against his co-defendants, as this first (and only) offer expressly required. Cooper Aff. ¶ 4; Loonam Aff. ¶ 4; Def.'s Letter, *United States v. Sessoms*, No. 04-cr-706 (May 5, 2007). Sessoms has implicitly conceded this fact before the Court, *see* Sessoms' Post-Hrg. Br. 22–23 (maintaining that he kept demanding an offer from the Government after it had withdrawn its first and only other offer); *see also, e.g.*, Govn's Post-Hrg. Memo. 13, 16; Hr'g Tr. 133:24–134:17, Feb. 3, 2016, and, in a telling omission, made no reference to any prior plea offer when he first appealed his conviction.[1] Accordingly, because Sessoms has failed to provide any evidence of a plea offer's existence beyond his own questionable attestations, his claim

---

[1] Notably, this failure is at odds with Sessoms' claim that he had "just wanted to admit his guilt and move on" in August of 2011. Hr'g 125:10.

7

must fail. *See, e.g.*, *Murph v. United States*, 12 F. Supp. 3d 557, 572 (E.D.N.Y. 2014) (holding that "that there can be no ineffective assistance of counsel claim if, as here, there is no actual plea offer that, but for the attorney's deficient assistance, would, with reasonable probability, have been accepted by the [d]efendant"); *Merzbacher v. Shearin*, 706 F.3d 356, 369–70 (4th Cir. 2013) (reversing grant of habeas relief for ineffective assistance due to failure to communicate offer after finding that no formal plea offer was made where prosecution's offer "finalized only one leg of a putative plea agreement, the length of sentence [,] and did not finalize the other legs"); *see also United States v. Suri*, Nos. 09–Cr–1190 (SHS), 13–Cv–8454 (SHS), 2014 WL 3928605, at *5 (S.D.N.Y. Aug.11, 2014) (denying ineffective assistance of counsel claim because "[petitioner] has not plausibly alleged that he would have accepted any actual plea offer").

Further weakening his case, Sessoms' accusation is seemingly predicated on a crucial misunderstanding. True, any plea agreement may have provided for a lower *recommended* minimum. Yet, as the Government has shown that it would not have accepted anything but a plea of guilty as to every count, such an agreement would not necessarily have produced a lower ultimate sentence. *See United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998) (stressing the relevance of this fact). As a matter of law, the lowest mandatory minimum applicable to the crimes to which Sessoms would have had to plead guilty would have been twenty-five years, and Sessoms' criminal history

and offense level would have always left open the possibility of a maximum sentence of life imprisonment. *See United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) (holding that a mistaken prediction about a petitioner's guidelines range cannot constitute ineffective assistance of counsel when the statutory minimums are clear). Consequently, since any plausible plea agreement would have required Sessoms to accept the possibility that this Court would impose a greater than minimal sentence, Sessoms' refusal, even now, to affirm his willingness to accept the twenty-five year minimum applicable to the crimes actually charged in the superseding indictment is fatal to his cause.

**C.    Remaining Claims**

Sessoms faults Cooper for not requesting that the jury be charged regarding venue, asking that the Court grant immunity to a prosecution witness, and advising the Court that he was being investigated by the SDNY in regards to an unrelated civil matter, which ultimately concluded without the filing of a single charge, *see, e.g.*, Cooper Aff. ¶ 8; Gov'n Br. at 33–36. Required to strongly presume that counsel provided sufficiently minimal assistance, the Court must "focus on the fundamental fairness of the proceeding being challenged." *Strickland*, 466 U.S. at 696. If none of these errors, even if true and whether individually or cumulatively considered, rendered Sessoms' trial unfair, Sessoms' conviction cannot now be nullified. *See id.*

*1.    Venue*

9

Sessoms' first argument fails for two reasons. First, the record establishes the opposite: Cooper did make a change-of-venue motion. Second, because the Eastern District of New York constituted a proper venue for Sessoms' prosecution, *see United States v. Naranjo*, 14 F.3d 145, 147 (2d Cir. 1994) (holding venue is generally "proper in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators), no prejudice can possibly be attributed to any purported failure to make such a motion, *see United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005) (holding that the failure to raise an objection to which no prejudicial error could be attributed cannot render counsel ineffective).

## 2. *Witness Immunity*

Sessoms' second argument is foreclosed by the Second Circuit's decision affirming the conviction of one of Sessoms' co-defendants. There, the circuit held that "no evidence here" has ever existed "of the type of overarching or manipulation of the immunity device for tactical reasons by the prosecution that might require the court to compel the government to immunize its witnesses" in its concurrent prosecutions of the various members of Hardy's gang, including Sessoms. *United States v. Jones*, 375 F. App'x 95, 96 (2d Cir. 2010). Because no such ground could be conjectured, any motion so requesting would have been futile, and Cooper's failure to seek one witness' immunization cannot prove his ineffectiveness. *See, e.g.*, *Cohen*, 427 F.3d at 170 (holding that the lack of a colorable ground for a motion negates any case for counsel's

ineffectiveness for not advancing such a motion); *Maldonado v. Burge*, 697 F. Supp. 2d 516, 541 (S.D.N.Y. 2010) (same).

### 3. *Cooper's Investigation by SDNY*

In regards to Sessoms' final contention, Cooper's investigation by SDNY as Sessoms was being prosecuted by the Government here does not rise to the level of an unconstitutional conflict of interest for two reasons.

First, no adverse effect has been credibly demonstrated. *See Cuyler*, 446 U.S. at 350 (establishing this requirement); *see also United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994) ("An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action."). As soon as Cooper discovered that probe's existence and informed the Court, new counsel was appointed. Until that point, Cooper's performance was adequate, and not an iota of data suggests Cooper somehow compromised Sessoms' defense as a result of the SDNY's unknown inquiry. *See supra* Part I.A.

Second, Sesssoms has not shown the elements required for a conflict to be established. Above all, the office which prosecuted him and the office that investigated Cooper are two legally and formally distinct entities. *See Armienti v. United States*, 234 F.3d 820, 824–25 (2d Cir. 2000) (holding that a conflict only exists when an attorney is being criminally investigated by the same office prosecuting his client). "To rise to

the level of an actual conflict the agency or office prosecuting the attorney *must* be the same as the agency or office prosecuting the defendant." *Beatty v. United States*, 142 F. Supp. 2d 454, 459 (S.D.N.Y. 2001) (emphasis added). Furthermore, no cognizable conflict can be found in the absence of a related criminal investigation or a substantial fear of pursuit by the client's own prosecutors. *See United States v. Fulton*, 5 F.3d 605, 609–12 (2d Cir. 1993) (actual conflict existed where defendant alleged that counsel was engaged in the heroin trafficking with which he was charged); *Skinner v. Duncan*, No. 01 Civ. 6656 (DAB) (AJP), 2003 WL 21386032, at *44 (S.D.N.Y. June 17, 2003) (declining to find a conflict when the charges actually filed against an attorney were unrelated to the charges that his client was facing). In the end, because Sessom's prosecutors were not Cooper's own, and because no evidence for either such a fear or such a connection can be found in this matter's cumbersome record, Cooper's investigation cannot give reason to overturn Sessoms' conviction.

### III

For the foregoing reasons, Sessoms' petition is DENIED. Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253©.

**SO ORDERED**

                                                   /S/ Frederic Block_____
                                              FREDERIC BLOCK
                                              Senior United States District Judge

Brooklyn, New York
June 23, 2017